David J. McGlothlin, Esq. (SBN 026059)
david@kazlg.com
**Kazerouni Law Group, APC**
301 E. Bethany Home Road, Ste C-195
Phoenix, AZ  85012
Phone: 800-400-6808
Fax: 800-520-5523

Ryan L. McBride, Esq. (SBN 032001)
ryan@kazlg.com
**Kazerouni Law Group, APC**
2221 Camino Del Rio S., #101
San Diego, CA 92108
Phone: 800-400-6808
Fax: 800-520-5523
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA, PHOENIX DIVISION

| | |
|---|---|
| Richard Winters Jr., individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> Fuchsia Spa Group, LLC d/b/a Fuchsia Spa, <br><br> Defendant. | Case No. <br><br> **CLASS ACTION** <br><br> **COMPLAINT FOR VIOLATIONS OF VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227(c)]** <br><br> **DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

- 1 -

Plaintiff Richard Winters, Jr. ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following upon information and belief based upon personal knowledge:

## NATURE OF THE CASE

1. Plaintiff brings this action individually and on behalf of all others similarly situated seeking damages and any other available legal or equitable remedies resulting from the illegal actions of Fuchsia Spa Group, LLC d/b/a Fuchsia Spa ("Defendant"), in negligently, knowingly, and/or willfully contacting Plaintiff on Plaintiff's cellular telephone in violation of the Telephone Consumer Protection Act, *47. U.S.C. § 227 et seq*. ("TCPA") and related regulations, specifically the National Do-Not-Call provisions, thereby invading Plaintiff's privacy.

## JURISDICTION & VENUE

2. Jurisdiction is proper under *28 U.S.C. § 1332(d)(2)* because Plaintiff, a resident of Arizona, seeks relief on behalf of a Class, which will result in at least one class member belonging to a different state than that of Defendant, who is headquartered in Arizona. Plaintiff also seeks up to $1,500.00 in damages for each call in violation of the TCPA, which, when aggregated among a proposed class in the thousands, exceeds the $5,000,000.00 threshold for federal court jurisdiction. Therefore, both diversity jurisdiction and the damages threshold under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

3. Venue is proper in the United States District Court for the District of Arizona pursuant to *28 U.S.C. § 1391(b)(2)* because Defendant does business within the State of Arizona and Plaintiff resides within the County of Maricopa.

## PARTIES

4. Plaintiff is a natural person residing in Mesa, Arizona and is a "person" as defined by *47 U.S.C. § 153 (39)*.

5. Defendant offers personal care services and is a "person" as defined by *47 U.S.C. § 153 (39)*.

6. The above-named Defendant at all times either acted itself or employed agents to act on behalf of Defendant in making the calls and sending the text messages identified in this complaint.

7. Plaintiff is informed and believes that each of the acts and/or omissions complained of herein was made known to and ratified by Defendant.

## FACTUAL ALLEGATIONS

8. Plaintiff's cellular telephone number ending in -6678 has been on the National Do-Not-Call Registry since October 5, 2018

9. On or around November 30, 2019, at 11:44 AM, Plaintiff received a text message from Defendant on his cellular telephone, number ending in -6678. The message, from phone number (480) 813-7465 read:

   Many NEW changes are happening at our Fuchsia Spas!
   Have you heard about our new services along with 2 added
   memberships? No contract for limited time only, contact
   us to get more information on the grand reopening
   specials!

10. During this time, Defendant began to use Plaintiff's cellular telephone for the purpose of sending Plaintiff spam advertisements and/or promotional offers, via text messages.

11. On or around March 3, 2020, at 6:49 PM, Plaintiff received another

1  text message from phone number (480) 813-7465 that read:

3  Hey there! It's Anna with Fuchsia Spa . We miss you and would love to have you back in for some me-time in March. I want to offer you $25 off when you spend $100 or more on services! We have limited offers available! To reserve your spot, just text back "25FREE" to have us reserve the perfect time and day for you to come in and Relax. See you soon! 😉

To opt out of all msgs, simply reply STOP.

12. Plaintiff is informed and believes that (480) 813-7465 belongs to Defendant based on the fact that Defendant identified itself in the text.

13. On or around March 11, 2020, at 7:16 PM, Plaintiff received another text message from phone number (480) 813-7465 that read:

We miss you 🥺 and would love to have you back in for some me-time in March.  We want to offer you a savings of $25 off when you spend $100 or more on services! I can reserve that for you, all you have to do is text back 25FREE and we will reserve your spot! See you soon! 💗

14. On or around March 11, 2020, after receiving Defendant's text, Plaintiff replied "Stop". Plaintiff immediately received a text message from phone number (480) 813-7465 that read:

NETWORK MSG: You replied with the word "stop" which blocks all texts sent from this number.

Text back "unstop" to receive messages again.

15. On December 16, 2023, at 2:03 PM, Plaintiff received another text message from phone number (480) 813-7465 that read:

Hey, it's Fuchsia Spa! Need a gift for your friend, teacher, hostess or someone special? Fuchsia gift cards make the perfect gift & they are on SALE! Stop by or purchase online https://salesmsg.io/1RxEv0-EwKiw Merry Christmas.

16. On December 18, 2023, at 11:16 AM, Plaintiff received another text message from phone number (480) 813-7465 that read:

Hey, it's Fuchsia Spa. Let your Santa know that he can give his favorite elf a SPA-tacular gift from Fuchsia. In December our paid-in-full memberships come with amazing gifts including a free service. Or need a last minute gift card? https://salesmsg.io/9fFOJW-Eyli1 Call or text us to learn more.

17. On December 21, 2023, at 2:34 PM, Plaintiff received another text message from phone number (480) 813-7465 that read:

Hey, it is Jessica from Fuchsia Spa! Need a last-minute holiday gift for a friend, teacher, or hostess? Fuchsia gift cards make the perfect gift! Stop by and we will make it

holiday ready for you or if you need the gift card instantly https://salesmsg.io/0CdsOU-F61bT May your Christmas be bright! Fuchsia Spa

18. On January 16, 2024, at 11:29 AM, Plaintiff received another text message from phone number (480) 813-7465 that read:

Hi it's Blanca from Fuchsia Spa, We have open massage, facial & wellness appointments this week. Call or text to get scheduled.
480-813-7465

19. The telephone number that Defendant, or its agent texted was assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming texts pursuant to 47 U.S.C. § 227 (b)(1).

20. These text messages constituted texts that were not for emergency purposes as defined by 47 U.S.C. § 227 (b)(1)(A)(i).

21. Defendant and its agent(s) never received Plaintiff's prior express consent to receive unsolicited text messages, pursuant to 47 U.S.C. § 227 (b)(1)(A).

22. These text messages by Defendant, or its agents, violated 47 U.S.C. § 227(c).

23. Even if Defendant originally had Plaintiff's consent in 2019, any "established business relationship" with Plaintiff would have expired "within eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call[.]" 47 C.F.R §

64.1200(f)(5).

24. Further, Plaintiff's cellular telephone number ending in -6678 has been on the National Do-Not-Call Registry since at least October 5, 2018.

25. From December 21, 2023, to January 16, 2024, Defendant placed multiple texts soliciting its business to Plaintiff on his cellular telephone ending in -6678. These texts were sent over three years after Plaintiff revoked consent to which Defendant acknowledged in writing.

26. Such texts constitute "solicitation calls" pursuant to 47 C.F.R. § 64.1200(c)(2) as they were attempts to promote or sell Defendant's services.

27. Plaintiff received multiple solicitation texts from Defendant within a 12-month period.

28. Defendants continued to call Plaintiff in an attempt to solicit its services and in violation of the National Do-Not-Call provisions of the TCPA.

29. Upon information and belief, and based on Plaintiff's experiences of being texted by Defendants after being on the National Do-Not-Call list for several years prior to Defendant's initial call, and at all relevant times, Defendant failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. § 227(c)(5).

## CLASS ALLEGATIONS

30. Plaintiff brings this action individually and on behalf of all others similarly situated, as a member the following proposed classes:

<u>The Do-Not-Call Registry Class ("The DNC Registry Class")</u>

>All persons within the United States registered on the National Do-Not-Call Registry for at least 30 days, who had not granted Defendants prior express consent nor had a prior established business relationship, who received more than one call made by or on behalf of Defendant that promoted Defendant's products or services, within any twelve-month period, within four years prior to the filing of the complaint.

The Internal Do-Not-Call Class ("The Internal DNC Class")

>All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number *after* making a request to Defendant to not receive future text messages.

31. Plaintiff represents, and is a member of both the DNC Registry Class and the Internal DNC Class.

32. Defendant, including its employees and agents, are excluded from The Classes. Plaintiff does not know the number of members in The Classes, but believes the Class members number in the thousands, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

33. The Classes are so numerous that the individual joinder of all of its members is impractical. While the exact number and identities of The Class members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes and thereon alleges that both The DNC Class and the Internal Class includes thousands of members. Plaintiff alleges that the Class members may be ascertained by the records maintained by Defendant.

34. Plaintiff and members of The Classes were harmed by the acts of

Defendant in at least the following ways: Defendant illegally contacted Plaintiff and Class members via their cellular telephones thereby causing Plaintiff and Class members to incur certain charges or reduced telephone time for which Plaintiff and Class members had previously paid by having to retrieve or administer messages left by Defendant during those illegal calls, and invading the privacy of said Plaintiff and Class members.

35. Common questions of fact and law exist as to all Class members which predominate over any questions affecting only individual members of the Classes. These common legal and factual questions, which do not vary between Class members, and which may be determined without reference to the individual circumstances of any Class members, include, but are not limited to, the following:

   a. Whether, within the four years prior to the filing of this Complaint, Defendant or its agents placed more than one solicitation call to the members of the DNC Registry Class whose telephone numbers were on the National Do-Not-Call Registry and who had not granted prior express consent to Defendant and did not have an established business relationship with Defendant;

   b. Whether Defendant obtained prior express written consent to place solicitation calls to Plaintiff or the Class members' telephones;

   c. Whether Defendant sent Plaintiff and the Class members texts after Plaintiff and Internal DNC Class members requested not to receive further communication;

   d. Whether Defendant's conduct was knowing and willful;

   e. Whether Plaintiff and the Class members were damaged

thereby, and the extent of damages for such violation; and

f. Whether Defendant should be enjoined from engaging in such conduct in the future.

36. As a person that received numerous solicitation text messages from Defendant within a 12-month period, who had not granted Defendants prior express consent, did not have an established business relationship with Defendants, and told Defendant to stop sending communications, Plaintiff is asserting claims that are typical of the claims of the Class members.

37. Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff has retained attorneys experienced in the prosecution of class actions.

38. A class action is superior to other available methods of fair and efficient adjudication of this controversy since individual litigation of the claims of all Class members is impracticable. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member.

39. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class

       members not parties to such adjudications or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

40. Defendant has acted or refused to act in respects generally applicable to The Class, thereby making appropriate final and injunctive relief with regard to the members of the Class as a whole.

## FIRST CAUSE OF ACTION
### Negligent and/or willful Violations of the TCPA, 47 U.S.C. §227
### (On Behalf of the DNC Registry Class)

41. Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth in the paragraphs above.

42. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

43. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[1]

44. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call

---

[1] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at http://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

45. The foregoing acts and omissions of Defendant constitutes numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above cited provisions of *47 U.S.C. § 227(c)*, and in particular *47 U.S.C. § 227 (c)(5)*.

46. As a result of Defendant's negligent violations of *47 U.S.C. § 227(c)*, Plaintiff and the Class Members are entitled an award of $500.00 in statutory damages, for each and every violation, pursuant to *47 U.S.C. § 227(c)(5)(B)*.

47. Plaintiff and the Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

48. The foregoing acts and omissions of Defendant constituted numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above cited provisions of *47 U.S.C. § 227(c)*, in particular *47 U.S.C. § 227 (c)(5)*.

49. As a result of Defendant's knowing and/or willful violations of *47 U.S.C. § 227(c)*, Plaintiff and the Class members are entitled an award of $1,500.00 in statutory damages, for each and every violation, pursuant to *47 U.S.C. § 227(c)(5)*.

50. Plaintiff and the Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## SECOND CAUSE OF ACTION

**Negligent and/or willful Violations of the TCPA, 47 U.S.C. §227(c)(2)**

**(On Behalf of the Internal DNC Class)**

51. Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth in the paragraphs 1 through 40 above.

52. The TCPA provides that any "person who has received more than one

telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

53. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet certain minimum standards, including:

"(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request….
(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made."
47 C.F.R. § 64.1200(d)(3), (6)

54. Under 47 C.F.R. § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

55. Plaintiff and Class members made requests to Defendant not to receive communications (text messages) from Defendant.

56. Defendant failed to honor Plaintiff and Class members' requests.

57. Upon information and belief, Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on their behalf, pursuant to 47 C.F.R. § 64.1200(d).

58. Because Plaintiff and members received more than one text message in a 12-month period made by or on behalf of Defendant in violation of Defendant in violation of 47 C.F.R. § 64.1200(d), as described above, Defendant violated 47 U.S.C. § 227(c)(5).

59. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and class members are entitled to an award of $500.00 in statutory damages for each and every negligent violation.

60. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and class members are entitled to an award of $1,500.00 in statutory damages for each and every knowing and/or willful violation.

61. Plaintiff and class members also suffered damages in the form of invasion of privacy.

62. Plaintiff and class members are also entitled to and seek injunctive relief, prohibiting Defendant's illegal conduct in the future, pursuant to 47 U.S.C. § 227(c)(5).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

(a) As a result of Defendants' negligent violations of *47 U.S.C. §227(c)(5),* Plaintiff and the Class members are entitled to and request $500 in statutory damages, for each and every violation, pursuant to *47 U.S.C. 227(c)(5)*;

(b) As a result of Defendants' willful and/or knowing violations of *47 U.S.C. §227(c)(5)*, Plaintiff and the Class members are entitled to and request treble damages, as provided by statute, up to $1,500, for each and every violation, pursuant to *47 U.S.C. §227(c)(5)*;

(c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

(d) An injunction requiring Defendant to cease all unsolicited text messaging activity, and to otherwise protect the interests of the Classes; and

(e) Any and all other relief that the Court deems just and proper.

**JURY DEMAND**

63. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Respectfully Submitted this 27th Day of February, 2024.

Kazerouni Law Group, APC

By: /s/ Ryan L. McBride
Ryan L. McBride
*Counsel for Plaintiff and the Proposed Class*